Opinion
 

 SILLS, P. J.
 

 Why is it, Dean Prosser once asked, that “ ‘so many of us’ ” feel that the famous
 
 Palsgraf
 
 case was “ ‘correctly decided, and that Mrs. Palsgraf should not recover?’ ” (See
 
 People
 
 v.
 
 Roberts
 
 (1992) 2 Cal.4th 271, 319 [6 Cal.Rptr.2d 276, 826 P.2d 274], quoting Prosser,
 
 Palsgraf Revisited
 
 (1953) 52 Mich. L.Rev. 1, 27.) Is it not that what happened was “‘too preposterous . . . [t]he combination of events and circumstances necessary to injure her... too improbable?’ ”
 
 (Ibid.)
 
 The present appeal is not exactly
 
 Palsgraf
 
 all over again, but there is enough of a family resemblance to warrant a reversal of a judgment in favor of the plaintiff.
 

 I
 

 Timothy Matlock, age seventeen, bought two packs of cigarettes from a gas station one day in April 1993. Tim gave one of the packs to his friend, Eric Erdley, age fifteen. Smoking as they walked, the two trespassed onto a private storage facility in Huntington Beach, where a couple of hundred telephone poles were stacked up high upon the ground, held in place by two vertical poles sticking out of the ground. The two had climbed on the logs many times before.
 

 Timothy and Eric were joined by 2 younger boys, about 10 or 11 years old, who walked with them on the logs. Eric was smoking a cigarette held in his left hand. Timothy began to tease the younger boys, telling them the logs were going to fall. The boys started to run, though perhaps more out of laughter than of fear. One of the younger boys ran right into Eric’s left arm. Eric dropped his cigarette down between the logs, where it landed on a bed of sand. For about 20 seconds Eric tried to retrieve the cigarette, but he couldn’t reach it. He stood up and tried to extinguish it by spitting on it, and again was unsuccessful.
 

 Then Eric caught up with Timothy, who was about 10 feet ahead. They went into some bunkers about 50 feet away; when they came out again after about 20 minutes, they saw flames at the base of the logs. They were seen running from the location.
 

 
 *586
 
 The Woodman Pole Company suffered considerable property damage because of the fire. Eric was insured under a $100,000 policy with plaintiff Wawanesa Mutual Insurance Company. Wawanesa paid $89,000 to Woodman, $10,000 to the Orange County Fire Department, and $1,000 to the Huntington Beach Fire Department. Wawanesa, now subrogated to Eric’s rights, filed this suit against Timothy and his father Paul E. Matlock for contribution.
 

 After a bench trial, the court awarded the insurer $44,500 against Timothy and Paul, which included $25,000 against Paul based on a statute which fixes liability on a custodial parent for the willful misconduct of a minor. (See Civ. Code, § 1714.1, subd. (a).) The trial judge said that while “several theories for recovery" were “articulated” against the defendants, specifically “conspiracy, trespass, negligence per se and joint enterprise/acting in concert,” the theory of recovery was “not important, as all would result in result in joint and several liability.” The judge stated that the statute that makes it unlawful to give cigarettes to minors, Penal Code section 308, had to have been enacted in 1891 with “more than health concerns” in mind, “since the health issues on tobacco are of considerably more recent concern.”
 
 [1]
 

 Timothy and his father Paul now appeal, arguing that there is no basis on which to hold Timothy liable for the damage caused when Eric dropped the cigarette.
 

 We agree. There is no valid basis on which to hold Timothy liable.
 

 II
 

 Negligence Per
 
 Se
 
 [2]
 

 Just because a statute has been violated does not mean that the violator is necessarily liable for any damage that might be ultimately traced back to the violation. As the court stated in
 
 Olsen
 
 v.
 
 McGillicuddy
 
 (1971) 15 Cal.App.3d 897, 902-903 [93 Cal.Rptr. 530]: “The doctrine of negligence per se does not apply even though a statute has been violated if the plaintiff
 
 *587
 
 was not in the class of persons designed to be protected or the type of harm which occurred was not one which the statute was designed to prevent.” Mere “but for” causation, as is urged in Wawanesa’s brief, is simply not enough. The statute must be designed to protect against the
 
 kind of harm
 
 which occurred.
 

 The statute that makes it illegal to furnish tobacco to minors, Penal Code section 308, has nothing to do with fire suppression. As it
 
 now
 
 stands, it is intended to prevent early
 
 addiction
 
 to tobacco. It may be true, as the trial court opined, that when the first version of the statute was enacted in 1891 (see Stats. 1891, ch. 70, § 1, p. 64) it was not directed primarily at protecting minors’ health.
 
 [3]
 
 But it is most certainly a health statute as it exists
 
 today.
 
 As our Supreme Court recently noted in
 
 Mangini
 
 v.
 
 R. J. Reynolds Tobacco Co.
 
 (1994) 7 Cal.4th 1057, 1060 [31 Cal.Rptr.2d 358, 875 P.2d 73] (quoting from an affirmed decision of the Court of Appeal), section 308 “ ‘reflects a statutory policy of protecting minors from addiction to cigarettes.’” The connection of section 308 with health is emphasized by the court’s specifically analogizing section 308 to former Health and Safety Code section 25967, which states that preventing children from “ ‘ “beginning to use tobacco products” ’ ” is “ ‘ “among the highest priorities in
 
 disease
 
 prevention for the State of California.” ’ ”
 
 (Mangini, supra,
 
 7 Cal.4th at pp. 1061-1062, italics added [quoting from appellate opinion quoting statute].)
 

 Nothing suggests that section 308 is part of any scheme to prevent fires. Its placement in the general morals section of the Penal Code belies such an intent.
 

 
 *588
 

 Ordinary Negligence
 

 Nor will ordinary negligence serve as a basis for liability based on the “but for” relationship between Timothy’s wrongful act and what ultimately transpired. The rule in negligence law is that the harm must be sufficiently likely to arise from a given act before it may be foreseeable in the legal sense.
 
 (Jefferson
 
 v.
 
 Qwik Korner Market, Inc.
 
 (1994) 28 Cal.App.4th 990, 996 [34 Cal.Rptr.2d 171].) Or, to put the same idea in more traditional tort terms: “ ‘The risk reasonably to be perceived defines the duty to be obeyed.’ ”
 
 (Dillon
 
 v.
 
 Legg
 
 (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], quoting
 
 Palsgraf v. Long Island R. R. Co.
 
 (1928) 248 N.Y. 339, 344 [162 N.E. 99, 59 A.L.R. 1253].)
 

 Foreseeability, as our Supreme Court noted in
 
 Schwartz
 
 v.
 
 Helms Bakery Limited
 
 (1967) 67 Cal.2d 232, 241, footnote 9 [60 Cal.Rptr. 510, 430 P.2d 68], is often involved in the determination of both duty and proximate cause. Courts must “approach the problem as one of determining the nature of the duty and the scope of the risk of the negligent conduct.”
 
 (Id.
 
 at p. 241.) More specifically, when an injury is the product of the intervening act of a third person, the test is whether the particular manner in which the third person acted is one of the hazards that makes an actor negligent.
 
 (Id.
 
 at pp. 241-242, citing
 
 Brousseau
 
 v.
 
 Carnation Co.
 
 (1955) 137 Cal.App.2d 570, 573 [290 P.2d 588].)
 

 In the present case, the concatenation between Timothy’s initial act of giving Eric a packet of cigarettes and the later fire is simply too attenuated to show the fire was
 
 reasonably
 
 within the scope of the risk created by the initial act. (See
 
 Hegyes
 
 v.
 
 Unjian Enterprises, Inc.
 
 (1991) 234 Cal.App.3d 1103 [286 Cal.Rptr. 85] [child bom prematurely because of lumbo-peritoneal shunt in mother’s womb could not recover from defendant who had caused the auto accident prior to conception which required the mother to be fitted with shunt].) We need only quote one extraordinarily long sentence from Wawanesa’s own respondent’s brief to show the Rube Goldbergesque system of fortuitous linkages necessary to get from A (giving the packet of cigarettes to Eric) to B (the damage caused by the fire):
 

 “ ‘But-for’ Timothy Matlock’s illegal act (see Penal Code § 308) of procuring tobacco for minor Eric Erdley (who was unable to purchase the cigarettes himself), and ‘but-for’ Timothy Matlock’s participation as a co-conspirator (see Baji Numbers 13.85 and 13.86) in an agreement to trespass to smoke these cigarettes with Eric Erdley on Wood-Man Pole Company land, and ‘but-for’ Timothy Matlock’s act of causing the younger children to msh off of the wood pile (because of Timothy Matlock’s acts of
 
 *589
 
 jumping on the logs), Eric Erdley would not have been on top of the Wood-Man Pole Company telephone poles smoking a cigarette at the time that he was bumped by the younger children and dropped the lit cigarette which started the fire [citation].”
 

 The sentence contains no fewer than three “but-for’s.” In the chain, the cigarette is far less important than the jostling. Yet fires are not within the risks one foreseeably incurs by teasing youngsters, even youngsters in the general vicinity of someone smoking a cigarette. It can hardly be reasonably contended that by teasing two youngsters walking on some telephone poles, one can foresee:
 

 (a) that they will try to get off those telephone poles,
 

 (b) and in the process of getting off bump into someone holding a cigarette,
 

 (c) who then drops the cigarette,
 

 (d) in a space between the wood poles, which
 

 (e) happens to be inaccessible, so that about 20 minutes later,
 

 (f) there is a conflagration.
 

 There is still simply too much fortuity in the chain.
 

 Someone who gives someone else a cigarette—even if the act of giving is itself unlawful by virtue of the receiver’s age—hardly can become an insurer of any property which the cigarette may by some happenstance ignite. There must be some reason to conclude that the act of giving the cigarette creates a
 
 fire hazard.
 
 Here, however, Wawanesa points to nothing, other than Eric’s age. Eric’s
 
 age,
 
 however, had nothing to do with the actual fire. A
 
 50-year-old
 
 could just as easily have dropped a cigarette if bumped.
 

 Conspiracy, Joint Venture, and Trespass
 

 Wawanesa mentions nothing in the record to indicate that Eric and Timothy ever had any joint
 
 intent
 
 whatsoever to start a fire when they went onto the property of the Woodman Pole Company. The most that can be said is that Timothy knew Eric would light up a cigarette. Yet to make everyone who knows that his or her friend is going to smoke a cigarette liable for any fires started if the friend is jostled and drops that cigarette would be an unreasonable extension of tort liability. If Eric and Timothy were in their 50’s, there would not even be the slightest doubt that Timothy could not be
 
 *590
 
 responsible for the fire just because he knew his friend was going to smoke.
 
 [4]
 
 The idea that there was some sort of “conspiracy” here is a gross overstatement of what common sense reveals really went on: Two teenagers went onto private land, one was jostled, dropped his cigarette, and a fire started. One may slap the legal label of “conspiracy” or “joint venture” on that scenario, but only unconvincingly: An agreement to start a fire is conspicuously lacking. Because there was no agreement to start a fire, there was no conspiracy, much less a joint venture.
 

 As to trespass,
 
 Cassinos
 
 v.
 
 Union Oil Co.
 
 (1993) 14 Cal.App.4th 1770 [18 Cal.Rptr.2d 574], relied on by Wawanesa, is inapposite. That case does not stand for the proposition, and we are unaware of any legal authority which does, that by merely trespassing on property one necessarily becomes liable for all damage that can be linked to a
 
 fellow
 
 trespasser. Under the classic criminal law formulation for conspiracies, “reasonable and probable consequences of the common unlawful design” (e.g., 1 Witkin and Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 181, p. 202),
 
 this
 
 fire was not the probable consequence of the trespass. (See
 
 People
 
 v.
 
 Roberts, supra,
 
 2 Cal.4th 271, 319 [“The criminal law thus is clear that for liability to be found, the cause of the harm not only must be direct, but also not so remote as to fail to constitute the natural and probable consequence of the defendant’s act.”].) The link between Timothy’s trespass and the fire is even weaker than the link between the fire and his giving cigarettes to Eric or his teasing of the younger boys.
 

 Ill
 

 Because there is no basis on which to hold Timothy liable we need not address the liability of his father. The judgment is reversed with directions to enter a new judgment in favor of Timothy and Paul Matlock. The Matlocks are to recover their costs on appeal.
 

 Wallin, J., and Rylaarsdam, J., concurred.
 

 Respondent’s petition for review by the Supreme Court was denied March 25, 1998.
 

 [1]
 

 All references to section 308 are to the Penal Code.
 

 [2]
 

 The question of whether section 308 affords a private right of action based on the unfair competition laws is now pending before the Supreme Court in
 
 Stop Youth Addiction, Inc.
 
 v.
 
 Lucky Stores, Inc.
 

 *
 

 (Cal.App.). For purposes of the present case, we will assume, without deciding, that Wawanesa has standing to raise the violation of section 308 as a basis on which to predicate a negligence per se claim. (See Evid. Code, § 669, subd. (a)(1) [“The failure of a person to exercise due care is presumed if: [¶]... He violated a statute . . . .”].)
 

 *
 

 Reporter’s Note: Review granted October 23, 1996 (S055373). See 17 Cal.4th 553 for Supreme Court opinion.
 

 [3]
 

 Which raises the question—why
 
 was
 
 it originally enacted? The trial judge may have been a little hasty in concluding that health was not the reason behind the 1891 statute. The noxiousness of tobacco was known long before 1891. Back in 1604 James I called it a custom “dangerous to the lungs” in his Counterblaste to Tobacco. By 1630 (give or take a few years), Sultan Murad IV tried to ban the use of tobacco. He failed. For their part, the Puritans of the Massachusetts Bay Colony tried to prohibit smoking about the same time as Murad. They failed as well.
 

 Assuming, for sake of argument, that the Legislature did not have minors’ health at heart when it prohibited giving tobacco to them in 1891, the placement of section 308 in chapter 7 of title 9 of the Penal Code, dealing with crimes against religion, conscience and “good morals,” furnishes another answer. While we do not have the legislative history from 1891, it appears the statute was most probably enacted to protect minors from the general licentiousness associated with the consumption of cigarettes in the 1890’s. (These days—though we recognize that there is altogether too much teenage tobacco smoking—cigarettes tend to be associated more with the World War II generation than with cheesy dens of iniquity.) However, we have found nothing, and certainly Wawanesa has cited us to nothing, which would show that section 308 was ever enacted out of some concern that minors with cigarettes would pose a fire hazard.
 

 [4]
 

 Wawanesa asserts that the trial judge found both teenagers “intended to commit the wrongful act (i.e., illegally smoking and trespassing),” thereby concluding that it did not make any difference who started the fire. The formulation is too hazy. Both boys intended to smoke and to trespass. Neither intended to start a fire.