Filed 3/20/18 Certified for Publication 4/12/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAULA J. NOVAK,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CONTINENTAL TIRE NORTH AMERICA et al.,<br><br>     Defendants and Respondents. | A149494, A150751, A150752<br><br>(Alameda County<br>Super. Ct. No. RG13704748) |

Plaintiff Paula J. Novak appeals defense summary judgments in her wrongful death action against a tire manufacturer, Continental Tire North America (Continental), and an auto mechanic, Chi Tai (collectively defendants). Plaintiff alleges defendants failed to warn about the dangers of rubber degradation in old tires, which led to a tire blowout in 2005 that injured her father. Plaintiff further alleges that those injuries impaired his mobility, necessitated his use of a motorized scooter with limited maneuverability, and led to his death in 2011 after his scooter was struck by a vehicle in a crosswalk. The trial court found the evidence insufficient to establish a causal link between defendants' conduct alleged to have caused one traffic accident and decedent's death years later following a separate traffic accident. We shall affirm the defense judgments.

1

## Background

In September 2005, 81-year-old Alex Novak was seriously injured when the car in which he was a passenger suffered a tire blowout and collided with a power pole.[1] Novak filed an action for strict product liability and negligence against defendants for failure to warn that tires degrade with age and should be replaced even if the tire shows good tread depth. (*Novak v. Continental Tire North America, Inc.* (A133073, May 24, 2013) [nonpub. opn.].) Defendants obtained a defense judgment but we reversed the judgment upon finding evidentiary and instructional errors. (*Ibid.*)

Novak died while the case was on appeal. Novak had been disabled as a result of the accident involving the tire blowout and required the use of a three-wheel motorized scooter as a mobility aid. In November 2011—six years after the tire blowout accident—87-year-old Novak was injured when a car making a right hand turn collided with his scooter in a crosswalk. Novak died eight days later. His strict liability and negligence action was not retried. Novak's daughter Paula filed this wrongful death action against Continental and Tai, faulting them for the 2005 tire blowout and resulting collision and extending that fault to her father's death years later following a different collision.[2]

### Evidence Presented on Motions for Summary Judgment

A detailed account of the facts is drawn from the parties' separate statements of undisputed facts and evidence submitted in support of them.

On September 12, 2005, Novak was a passenger in a 1988 Chevrolet Van being driven by Milagros Ibarra that collided with a power pole located near the intersection of Coronado Avenue and Cerritos Avenue in Fremont, California. The 1988 Chevrolet van

---

[1] We refer to decedent Alex Novak by his last name. We refer to his daughter Paula Novak as plaintiff.

[2] Novak's other daughter, Wanda Gillooly, did not join the action and was listed as a nominal defendant to protect her hereditary interest in any recovery. (Code Civ. Proc., § 382.) Plaintiff argues Gillooly was a party to the action who should have been served with defendants' motions for summary judgment. Gillooly never appeared in the case and the record contains no evidence she was served with the complaint. In any event, it is conceded that any error in failing to serve Gillooly with defendants' motions was harmless as she had actual knowledge of the motions.

was equipped with a "General Road Tamer LX" tire that had been manufactured in 1993 by Continental's predecessor. Plaintiff alleges that the September 12, 2005 accident was caused by a sudden failure of the "General Road Tamer LX" tire, including sudden tread separation and sudden deflation ("blow-out") of the tire. Plaintiff alleges defendants failed to warn Ibarra that old tires lose "resiliency" with age, making them prone to blow-outs. Plaintiff further alleges that as a result of the September 12, 2005 accident, Novak required the use of a three-wheel scooter "to go about the community."

On November 18, 2011, Novak was riding his three-wheel scooter on Fremont Boulevard when he collided with a 1997 Toyota Corolla driven by Mea MD Abdul Quader. The collision occurred in the crosswalk at the intersection of Mowry Avenue and Fremont Boulevard. Prior to the collision, Quader's Corolla was heading east on Mowry Avenue in the right turn lane approaching Fremont Boulevard where he was intending to turn right onto southbound Fremont Boulevard, while Novak was on his three-wheel scooter on the sidewalk ramp at the entrance to the crosswalk at the southwest corner of the intersection. Novak paused at the southwest corner of the intersection before entering the crosswalk. As Quader approached the intersection, he stopped his vehicle prior to the painted white crosswalk limit line while waiting for traffic to clear. When westbound traffic cleared, Quader looked to his right and observed Novak stopped on the sidewalk at the southwest corner of the intersection in his three-wheel scooter. Quader saw that Novak was waiting to cross the roadway. Quader then looked left for southbound traffic and did not see anyone approaching, so he released his foot from the brake and accelerated forward. Novak did not see Quader's car beginning to move. Novak entered the intersection and his scooter collided with the front-quarter panel of the passenger side of Quader's car, according to a police officer who investigated the accident. The officer determined that Quader failed to yield the right-of-way to Novak and that "the fault for the accident" rested with Quader, not Novak. (Veh. Code, § 21950, subd. (a).) The force of the collision knocked over the scooter and Novak fell to the ground.

A mechanical engineer and expert in accident reconstruction tested the scooter operated by Novak and found it "takes 3.2 feet to come to a gradual stop after the forward

3

movement lever is released by the operator." The engineer opined that "the ability to stop this scooter is substantially impaired as compared to the ability of an upright, able-bodied person to physically stop walking."

Following the accident, Novak was taken to Eden Medical Center. His left leg was sutured and a CT scan performed. The treating physician reviewed the CT scan, found no injuries, and released Novak that day. Two days later, on November 20, 2011, Novak self-admitted to the hospital complaining of back pain. Novak died six days later, on November 26.

An autopsy found Novak had sustained recent thoracic spine fractures and hemorrhaging, which the coroner attributed to trauma sustained in the scooter-vehicle collision. The death certificate lists the cause of death as acute cardiac insufficiency as a result of atherosclerotic cardiovascular disease. Novak's recent spinal fractures were listed among "other significant conditions contributing to death but not resulting in the underlying cause" of death. An orthopedic surgeon opined that Novak's death "was caused, accelerated, and hastened to occur on that date and at that time by medical complications of the injuries sustained in the scooter accident of November 18, 2011."

**Discussion**

"In reviewing a grant of summary judgment, we independently evaluate the record, liberally construing the evidence supporting the party opposing the motion, and resolving any doubts in his or her favor. [Citation.] As the moving party, the defendant must show that the plaintiff has not established, and reasonably cannot be expected to establish, one or more elements of the cause of action in question." (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500.)

"In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence." (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88,105.) "A plaintiff in a negligence suit must demonstrate ' "a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." ' " (*Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.)

4

At issue here is causation. The trial court found that "plaintiff cannot establish a causal link between the tire failure in 2005 and the [scooter] accident" in 2011 and Novak's death eight days later. Plaintiff disputes this finding. She argues that defendants' failure to warn about the dangers of rubber degradation in old tires caused the tire blowout in 2005; the blowout caused a collision; the collision caused disabling injuries to her father; the injuries caused her father to use a scooter; use of the scooter caused her father to have less maneuverability than a pedestrian; the father's impaired maneuverability caused the 2011 collision between his scooter and a vehicle; and the scooter collision caused her father's death.

Plaintiff's argument is primarily focused on just one aspect of causation — variously referred to as cause in fact or actual, physical or logical cause. " ' "An act is a cause in fact if it is a necessary antecedent of an event." ' " (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 352.) "California has definitively adopted the substantial factor test of the Restatement Second of Torts for cause-in-fact determinations. [Citation.] Under that standard, a cause in fact is something that is a substantial factor in bringing about the injury. [Citations.] The substantial factor standard generally produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968-969.) We will assume, for purposes of this appeal, that defendants' conduct set in motion a series of events that led to Novak's death and was, thus, a "cause in fact" of his death.

The question is whether there is a sufficient connection between the risks created by defendants' conduct and the injury Novak suffered to hold defendants responsible. It is this normative or evaluative aspect of proximate cause that the word "proximate" imperfectly conveys. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1056 (dis. opn. of Kennard, J.).) This aspect of causation " 'focuses on public policy considerations. Because the purported [factual] causes of an event may be traced back to the dawn of humanity, the law has imposed additional "limitations on liability other than simple causality." [Citation.] "These additional limitations are related not only to the degree of

5

connection between the conduct and the injury, but also with public policy." [Citation.] Thus, "proximate cause 'is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct.' " [Citation.]' [Citation.] As Witkin puts it, "[t]he doctrine of proximate cause limits liability; i.e., in certain situations where the defendant's conduct is an actual cause of the harm, the defendant will nevertheless be absolved because of the manner in which the injury occurred. . . . Rules of legal cause . . . operate to relieve the defendant whose conduct is a cause in fact of the injury, where it would be considered unjust to hold him or her legally responsible.' " (*State Dept. of State Hospitals v. Superior Court, supra,* 61 Cal.4th at p. 353.)

One policy consideration subsumed within the broad concept of proximate cause is the extent to which a defendant should be held liable for unforeseeable consequences. (Prosser & Keeton, Torts (5th ed. 1984) § 42, p. 279.) Foreseeability of harm is also relevant when determining if the defendant owed a duty of care to plaintiff. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771-773.) The concepts of duty and proximate cause are each expressions of public policy and courts have taken varying approaches in using one or the other concept to limit liability. (Prosser & Keeton, Torts, *supra,* § 42, pp. 274-275.) Our California Supreme Court has held that "[n]o-duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases." (*Cabral v. Ralphs Grocery Co., supra,* at p. 773, fn. 3.) Proximate cause rules apply in individual cases (*id.* at p. 780 & fn. 8) and "take into account the particular context in which any act or injury occurred" (*Vasilenko v. Grace Family Church, supra,* 3 Cal.5th at p. 1084).

Concerning foreseeability of harm, a defendant's "conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." (Rest.2d, Torts, § 435(2).) For liability to attach, "[t]here must be some reasonable connection between the original negligence and its

consequences, between the harm threatened and the harm done." (Prosser, *Palsgraf Revisited* (1953) 52 Mich. L.Rev. 1, 32.)

Proximate cause analysis is also concerned with intervening forces operating independent of defendant's conduct. (Prosser & Keeton, Torts, *supra,* § 42, p. 279.) Multiple elements are weighed in determining whether an intervening force is a superseding cause of harm to the plaintiff, thus absolving defendant from liability: "(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence; [¶] (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation; [¶] (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation; [¶] (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act; [¶] (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him; [¶] (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion." (Rest.2d, Torts, § 442.)

The traffic accident at issue here, in which Novak's scooter was struck by a motorist who failed to yield, was not a foreseeable consequence of defendants' failure to warn that old tires on another vehicle driven years earlier by another motorist were prone to blowouts. The connection between defendants' conduct and the injury suffered is too attenuated to show the later accident to be within the scope of the risk created by defendants' conduct: "the injury suffered is connected only distantly and indirectly to the defendant's negligent act." (*Cabral v. Ralphs Grocery Co., supra,* 51 Cal.4th at p. 779.) It is "highly extraordinary" to posit defendants' conduct as the cause of Novak's death. (Rest.2d, Torts, § 435(2).) The vehicle-scooter accident operated independently of any situation created by defendants' alleged negligence and was due to the superseding cause of a motorist's wrongful failure to yield when entering a crosswalk. (Rest.2d, Torts, § 442.)

Causation is ordinarily a question of fact but " 'where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact.' " (*State Dept. of State Hospitals v. Superior Court, supra,* 61 Cal.4th at p. 353; accord Prosser & Keeton, Torts, *supra,* § 45, pp. 319-321.) A number of courts have found, as a matter of law, that a defendant is not liable for an injury only distantly connected to defendant's conduct.

The classic case is *Palsgraf v. Long Island Railroad Co.* (1928) 248 N.Y. 339 [162 N.E. 99].) Helen Palsgraf "was standing on a platform of defendant's railroad after buying a ticket to go to Rockaway Beach. A train stopped at the station, bound for another place. Two men ran forward to catch it. One of the men reached the platform of the car without mishap, though the train was already moving. The other man, carrying a package, jumped aboard the car, but seemed unsteady as if about to fall. A guard on the car, who had held the door open, reached forward to help him in, and another guard on the platform pushed him from behind. In this act, the package was dislodged, and fell upon the rails. It was a package of small size, about fifteen inches long, and was covered by a newspaper. In fact it contained fireworks, but there was nothing in its appearance to give notice of its contents. The fireworks when they fell exploded. The shock of the explosion threw down some scales at the other end of the platform many feet away. The scales struck the plaintiff, causing injuries for which she sues." (*Id.* at pp. 340-341.) Defendant railroad was found not liable because the guard's conduct in assisting one passenger to board a train involved no foreseeable risk to another passenger standing at the opposite end of the platform. (*Id.* at p. 341.)

*Palsgraf* and other cases denying liability for an injury following an unlikely series of events have sometimes been resolved as a question of duty but, ultimately, are founded on the lack of a close causal connection between the defendant's conduct and the injury suffered. "What is the true reason that so many of us feel that the [*Palsgraf*] case was correctly decided, and that Mrs. Palsgraf should not recover?," Prosser asked. (Prosser, *Palsgraf Revisited*, *supra,* 52 Mich. L.Rev. at p. 27.) "It is that what . . . happen[ed] to her is too preposterous. Her connection with the defendant's guards and the

8

package is too tenuous; in the old language, she is too remote. The combination of events and circumstances necessary to injure her is too improbable, too fantastic." (*Ibid.*)

Our Supreme Court has likewise observed that determinations of liability are sometimes founded on duty principles when the determination properly rests on the attenuated causal connection between the defendant's conduct and the injury suffered. (*Cabral v. Ralphs Grocery Co., supra,* 51 Cal.4th at pp. 779-780 & fn. 8.) The high court summarized one such case relevant here: "In *Bryant* [*v. Glastetter* (1995) 32 Cal.App.4th 770], a tow truck driver working to remove a vehicle from the shoulder of a freeway was fatally struck by a passing vehicle. His surviving wife and children sued the original driver of the vehicle he was removing, who had earlier been pulled over and arrested for drunken driving at that location. [Citation.] The appellate court held the defendant (the drunken driver) owed no duty to the decedent to prevent the injury he suffered. The defendant owed decedent, like anyone else potentially injured by her driving while intoxicated, a duty to refrain from doing so [citation] but the connection between her negligence and the type of injury that resulted—an errant vehicle striking the tow truck driver called to remove her car from the freeway—was too indirect and attenuated, for 'there is no logical cause and effect relationship between that negligence and the harm suffered by decedent except for the fact that it placed decedent in a position to be acted upon by the negligent third party.' " (*Cabral v. Ralphs Grocery Co.,* at p. 780 & fn. 8.)

Other cases have properly denied liability on proximate cause grounds, noting the lack of causal connection between defendant's conduct and plaintiff's injury. In *Wawanesa Mutual Ins. Co. v. Matlock* (1997) 60 Cal.App.4th 583, "Timothy Matlock, age [17], bought two packs of cigarettes from a gas station . . . . Tim gave one of the packs to his friend, Eric Erdley, age [15]. Smoking as they walked, the two trespassed onto a private storage facility in Huntington Beach, where a couple of hundred telephone poles were stacked up high upon the ground, held in place by two vertical poles sticking out of the ground. . . . [¶] Timothy and Eric were joined by [two] younger boys, about [10] or [11] years old, who walked with them on the logs. Eric was smoking a cigarette held in his left hand. Timothy began to tease the younger boys, telling them the logs were

9

going to fall. The boys started to run, though perhaps more out of laughter than of fear. One of the younger boys ran right into Eric's left arm. Eric dropped his cigarette down between the logs, where it landed on a bed of sand. For about 20 seconds Eric tried to retrieve the cigarette, but he couldn't reach it. He stood up and tried to extinguish it by spitting on it, and again was unsuccessful. [¶] Then Eric caught up with Timothy who was about 10 feet ahead. They went into some bunkers about 50 feet away; when they came out again after about 20 minutes, they saw flames at the base of the logs." (*Id.* at p. 585.) The court found "no valid basis" to hold Timothy liable (*id.* at p. 586) upon concluding that "the concatenation between Timothy's initial act of giving Eric a packet of cigarettes and the later fire is simply too attenuated to show the fire was *reasonably* within the scope of the risk created by the initial act" (*id.* at p. 588).

In the present case, the causal connection between defendants' conduct and the injury suffered is even more tenuous than that presented in *Palsgraf, Bryant* and *Wawanesa*. There is, in the words of Prosser, no "reasonable connection between the original negligence and its consequences, between the harm threatened and the harm done." (Prosser, *Palsgraf Revisited*, *supra*, 52 Mich. L.Rev. at p. 32.) Or, as our Supreme Court has phrased it, " 'there is no logical cause and effect relationship between defendant's negligence and the harm suffered by decedent except for the fact that it placed decedent in a position to be acted upon by the negligent third party.' " (*Cabral v. Ralphs Grocery Co., supra,* 51 Cal.4th at p. 780.)

Plaintiff argues that defendants are responsible for the first traffic accident that disabled Novak and, thus, should be held liable for his death from a second traffic accident that would not have occurred had he not been disabled. On this point, they rely upon the Restatement Second of Torts, section 460: "If the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and which is a normal consequence of such impairment."

The cited rule "applies only where the second accident is a normal consequence of the original injury" and "leaves open the question of the actor's liability for a second

10

injury brought about by the negligence of a third person together with the impaired condition of the plaintiff." (Rest.2d, Torts, § 460, com. (b) & (c).) As previously discussed, the facts here show that the second accident is not a normal consequence of the original injury and the negligence of a third person—the motorist who failed to yield to Novak in the crosswalk—was the superseding cause of the injury he suffered.

**Disposition**

The judgments are affirmed.


Pollak, J.


We concur:

McGuiness, P.J.*
Siggins, J.

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/12/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAULA J. NOVAK,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CONTINENTAL TIRE NORTH AMERICA et al.,<br><br>     Defendants and Respondents. | A149494, A150751, A150752<br><br>(Alameda County<br>Super. Ct. No. RG13704748)<br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on March 20, 2018, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


Date: April 12, 2018                                          _McGuiness, J. _____
                                                                                        McGuiness, P.J.*

_____

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial court: | Alameda County Superior Court |
| Trial judge: | Honorable Stephen Pulido |

Counsel for plaintiff and appellant
Paula J. Novak:

STEPHEN F. VON TILL
Von Till & Associates

OSCAR R. ROESLER
Law Office of Oscar Roesler

Counsel for defendants and respondents
Continental Tire The Americas, LLC:

YOKA & SMITH
Walter M. Yoka
Anthony F. Latiolait
Jeffrey Gordon
Nicholas von der Lancken

Chi Tai:

HARTSUYKER, STARTMAN &
WILLIAMSABREGO
Edward J. Rodzewich, Esq.

A149494, A150751, A150752