Filed 8/18/20; Modified and Certified for Publication 8/24/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TINA SHIH, | B299329 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC686784) |
| v. | |
| STARBUCKS CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura A. Seigle, Judge. Affirmed.

Law Offices of Jeffrey T. Bell, Jeffrey T. Bell and Rick Ma, for Plaintiff and Appellant.

Niddrie Addams Fuller Singh and Victoria E. Fuller; Price Pelletier and Stephen T. Pelletier for Defendant and Respondent.

# INTRODUCTION

Tina Shih filed this action against Starbucks Corporation after she spilled a cup of hot tea she purchased from a Starbucks store and suffered second degree burns. Shih asserted causes of action for products liability and negligence, alleging the cup was defective. The trial court granted Starbucks' motion for summary judgment, ruling, among other things, any alleged defect in the cup did not cause Shih's injuries. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *Shih Sues Starbucks After Spilling Hot Tea on Herself*

Shih filed this action on a form complaint, alleging Starbucks "provided a defective coffee cup and sleeve that caused the spillage of boiling hot coffee onto [her] thighs." At her deposition Shih testified she went to a Starbucks store with her friend, and each of them ordered a cup of hot tea. When the two drinks were ready, Shih retrieved them from the store's pick-up counter. Each drink had a lid and was "double-cupped," meaning the cup containing the hot tea was inserted into a second empty cup. Neither drink, however, had a sleeve around the outer cup.

When Shih picked up the drinks, she noticed they were "extremely hot." Nevertheless, she slowly carried the drinks, one in each hand, to a table in the store and set them down. Shih sat in a chair at the table, started talking with her friend, and removed the lid on her drink. Shih then attempted, while seated, to bend forward and take a sip from the open cup in front of her. To accomplish this, Shih "tried to push the chair a little bit but

2

the chair got pushed out more than [she] anticipated." Shih "grabbed onto the table" to maintain her balance, which caused her drink to spill. Shih alleged causes of action for products liability and negligence.

B. *The Trial Court Grants Starbucks' Motion for Summary Judgment*

Starbucks filed a motion for summary judgment or in the alternative for summary adjudication. Starbucks argued that Shih could not prevail on her product liability cause of action because it was based solely on Shih's allegation Starbucks failed to include adequate warnings when it served her drink and that Starbucks did not have a duty to warn of obvious dangers associated with a hot cup of tea. Starbucks also argued any alleged defect in the cup did not cause Shih's alleged injuries. Starbucks argued Shih could not prevail on her negligence cause of action because it was based solely on her allegation Starbucks provided a defective cup.

In opposition to the motion Shih argued that a drink in a double cup instead of in a cup with a sleeve was a manufacturing defect. Shih submitted a copy of Starbucks' Beverage Resource Manual, which stated that a "cup sleeve should be used" on most hot beverages and that "short water-based beverages . . . are the only cups that should be double-cupped, unless by customer request." Shih also argued the absence of a sleeve around the cup and the fact Starbucks "filled the cup" to the brim caused her injuries.

The trial court granted the motion for summary judgment. The court ruled that Shih failed to show there was a triable issue of material fact regarding whether Starbucks had a duty to warn

of risks associated with the cup of tea, that Shih could not prove the cup of tea had a manufacturing defect because Starbucks' policy about when cups should include sleeves was "about reducing waste and customer preference, not about a manufacturing design," and that neither the absence of a cup sleeve nor the high level of tea in the cup was a cause of Shih's injuries. The court ruled Shih could not prevail on her negligence cause of action for the same reasons. Shih timely appealed from the ensuing judgment.

## DISCUSSION

A. *Standard of Review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607.) "To meet its initial burden in moving for summary judgment, a defendant must present evidence that either 'conclusively negate[s] an element of [each of] the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of [each] cause of action." (*Henderson v. Equilon Enterprises, LLC* (2019) 40 Cal.App.5th 1111, 1116; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-854.) "Once the defendant satisfies its initial burden, 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.'" (*Henderson*, at p. 1116; see *Aguilar*, at p. 849.)

4

We review a trial court's ruling on a motion for summary judgment de novo. (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.) We consider "'"'"all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'"'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.)

### B. *The Alleged Defects in the Cup Were Not a Legal Cause of Shih's Injuries*

"'A manufacturer, distributor, or retailer is liable in tort if a defect in . . . its product causes injury while the product is being used in a reasonably foreseeable way.'" (*Demara v. The Raymond Corp.* (2017) 13 Cal.App.5th 545, 553; see *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 560; *Collins v. Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1500.) "A product can be defective in its manufacture or design, or because it fails to include a warning about known risks." (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 179; see *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 125 ["Products liability may be premised upon a theory of design defect, manufacturing defect, or failure to warn."].) As with other tort claims, the plaintiff must show the defect in the product was a legal or proximate cause of the plaintiff's injury. (See *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 348 ["'[a] manufacturer is liable only when a defect in its product was a legal cause of injury'"]; *Soule*, at p. 572 [same]; *Walt Rankin & Associates, Inc. v. City of Murrieta* (2000)

84 Cal.App.4th 605, 626 ["""""[p]roximate cause is legal cause, as distinguished from the laymen's notion of actual cause"""""]; see also Civ. Code, § 3333 ["For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby"]; *Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 155 (*Modisette*) [plaintiffs could not recover on products liability causes of action where the defect was not the proximate cause of their injures].)

Starbucks met its burden of negating an element of Shih's products liability cause of action by showing the alleged defects in the cup of tea it served Shih were not a proximate cause of Shih's injuries. "[P]roximate cause has two aspects. "'One is *cause in fact*."'" (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 352; accord, *Modisette, supra*, 30 Cal.App.5th at p. 153.)[1] "The second aspect of proximate cause 'focuses on public

---

[1] Courts usually use the substantial factor test to determine whether a product defect was a cause-in-fact of an injury. (See *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968 ["California has definitively adopted the substantial factor test . . . for cause-in-fact determinations."]; *Novak v. Continental Tire North America* (2018) 22 Cal.App.5th 189, 197 [same]; *Demara v. The Raymond Corp., supra*, 13 Cal.App.5th at p. 554 [applying the substantial factor test to a design defect cause of action]; *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 190 [applying the substantial factor test to a manufacturing defect cause of action]; *Huitt v. Southern California Gas Co.* (2010) 188 Cal.App.4th 1586, 1604 [applying the substantial factor test to a strict products liability action for failure to warn]; but see *State Dept. of State Hospitals v. Superior Court, supra*, 61 Cal.4th at p. 352, fn. 12 [stating that the substantial factor test

6

policy considerations.  Because the purported [factual] causes of an event may be traced back to the dawn of humanity, the law has imposed additional "limitations on liability other than simple causality."'" (*State Dept. of State Hospitals*, at p. 353.)  In such situations, even "where the defendant's conduct is an actual cause of the harm, the defendant will nevertheless be absolved because of the manner in which the injury occurred."  (*Ibid*.; accord, *Modisette, supra*, 30 Cal.App.5th at p. 153; see *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1235, fn. 1 ["Causation analysis in tort law generally proceeds in two stages: determining cause in fact and considering various policy factors that may preclude imposition of liability."].)

Shih alleged, without further explanation, Starbucks served her tea in a defective cup and sleeve.  (See *Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1403 ["'The pleadings define the issues to be considered on a motion for summary judgment.'"].)  During her deposition she testified that the drink was double-cupped and did not include a sleeve and that the cup was filled to the brim with hot tea.[2]

The absence of a sleeve on the cup and presence of tea filled to the top of the cup arguably were causes-in-fact of Shih's injuries.  Shih argues that, "but for" the fact the cup was "too hot and too full" to hold (although she was able to hold the cup and

only applies "where concurrent independent causes contribute to an injury" and that "the 'but for' test governs" other situations].)

[2]    Although Shih also testified the lid was not securely fastened to the cup, she does not argue Starbucks' failure to properly affix the lid caused her injuries.  Nor can she.  Shih admitted that, before she spilled her drink, she removed the lid because she knew the drink was hot.

7

carry it to the table), Shih would not have "attempt[ed] to sip the water from the cup" in the manner she did. Instead, Shih presumably would have raised the cup to her mouth, and therefore would not have leaned forward, would not have moved the chair out from under her, would not have lost her balance, would not have grabbed the table, and would not have knocked her cup off the table and spilled hot tea on herself.

But that's a lot of "would not haves," and because of that the alleged defects in the drink were "too remotely connected with [the plaintiff's] injuries to constitute their legal cause." (*Modisette*, *supra*, 30 Cal.App.5th at p. 154; see *ibid.* [""legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay""""]; *Novak v. Continental Tire North America* (2018) 22 Cal.App.5th 189, 197 (*Novak*); ["[t]he connection between defendants' conduct and the injury suffered is too attenuated" to satisfy the element of proximate causation].) As the Restatement (Third) of Torts explains, a defendant's "liability is limited to those harms that result from the risks that made the actor's conduct tortious." (Rest.3d Torts, Products Liability, § 29.) A defendant "is not liable for harm when the tortious aspect of the [defendant's] conduct"—here, the alleged defects in the drink—"was of a type that does not generally increase the risk of [the plaintiff's] harm." (*Id.*, § 30; see *State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at p. 359 (conc. opn. of Werdegar, J.) ["coincidental causation—an allegation that some breach created an opportunity for an injury to occur, without increasing the risk of that injury occurring—is insufficient"]; *Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 80, fn. 4

[same]; cf. *Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1022 ["California law accepts and follows the Restatement of Torts on the issue of superseding cause"].)

For example, in *Novak, supra,* 22 Cal.App.5th 189 the tires of a car in which the decedent was a passenger blew out, causing an accident. (*Id.* at pp. 192-193.) The decedent survived the accident, but his injuries required him to use a motorized scooter for mobility. Six years later he died after a car struck him while he was on the scooter in a crosswalk. (*Id.* at p. 193.) The decedent's daughter sought to hold the tire manufacturer liable for his death. The court in *Novak* held that, even assuming the defendant's failure to warn about risks in the tires "set in motion a series of events that led to [the decedent's] death and was, thus, a 'cause in fact' of his death," the "connection between defendants' conduct and the injury suffered is too attenuated to show the later accident to be within the scope of the risk created by defendants' conduct." (*Id.* at pp. 196-197.)

The same principle applies here. Shih spilled her drink because, after she walked to the table with the two hot drinks in her hands, put her drink down, and removed the lid, she bent over the table, pushed out her chair, lost her balance, grabbed the table to avoid failing, and knocked her drink off the table. Although it is foreseeable that a customer could lose his or her balance while seated at or rising from a table, such an event is not "within the scope of the risk" (*Novak, supra,* 22 Cal.App.5th at pp. 196-197) created by a restaurant's decision to serve a hot beverage that is filled to the brim or that does not have a sleeve.[3]

---

[3] Nor would a sleeve or a less-than-full cup mitigate the injuries reasonably expected to occur from this type of accident.

9

Starbucks' conduct in serving Shih a full cup of hot tea without a cup sleeve may have "set in motion" the particular "series of events" that led to Shih spilling her drink on herself, just as in *Novak* the tire manufacture's failure to warn about problems with its tires set in motion the series of events that culminated years later in a car hitting the decedent in a crosswalk. But neither the failure to use a cup sleeve nor the level to which a coffeehouse employee fills a hot drink "generally increase[s] the risk" a customer will accidentally lose his or her balance while attempting to execute the kind of unorthodox drinking maneuver Shih performed here, just as tire defects generally do not increase the risk that a person who rides in a car with defective tires will later be hit in a crosswalk by a different car. (See Rest.3d Torts, *supra*, § 30, cmt. a ["An actor's tortious conduct," or a defect, "may be a factual cause of harm . . . but not be of a type such as to affect the probability of such harm occurring."].)

To be sure, the absence of a cup sleeve may have increased the likelihood of certain other risks. For example, had Shih burned her hand when she touched the cup or dropped the cup because it was too hot for her to hold, Shih might have been able to allege and show that any injuries she may have suffered were proximately caused by the absence of a sleeve. But that is not what happened. To the extent the absence of a cup sleeve and the amount of tea in the cup caused Shih to lose her balance (because she otherwise would have chosen a more traditional way to drink hot tea), the course of events was not a foreseeable result of the alleged defects. (See *Modisette, supra*, 30 Cal.App.5th at p. 155 [where a driver crashed into the plaintiffs' parked car because he was distracted by his mobile phone, the phone manufacturer's failure to install lockout technology, even though

a cause-in-fact, was not a proximate cause of the crash because "the gap between [the defendant's] design" of the phone and the accident was "too great for the tort system to hold [the defendant] responsible"]; *Wawanesa Mutual Ins. Co. v. Matlock* (1997) 60 Cal.App.4th 583, 588 [individual who gave cigarettes to a minor was not liable for property damage caused when the minor dropped a lit cigarette and started a fire because the fire was not "*reasonably* within the scope of the risk created by the initial act"]; see also *Palsgraf v. Long Island R.R. Co.* (1928) 248 N.Y. 339, 339 [railway was not liable for the plaintiff's injuries where a railway guard attempted to push a passenger onto a train, which caused the passenger to drop a package containing fireworks, which exploded, which dislodged scales on the railway platform that struck the plaintiff].)

Shih argues whether the alleged defects in the cup were a cause of her injuries is a question for the jury. "'Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law. . . . Nevertheless, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact.'" (*State Dept. of State Hospitals v. Superior Court, supra*, 61 Cal.4th at p. 353; see *Modisette, supra*, 30 Cal.App.5th at p. 152; *Novak, supra*, 22 Cal.App.5th at p. 197.) Here, even resolving all disputed factual issues and making all reasonable inferences in Shih's favor, Shih's undisputed testimony showed that the events leading to the tea spill were, as a matter of law, too remote from the alleged defects in the cup for Shih to prove proximate causation.

C.    *Starbucks' Alleged Negligence Was Not a Legal Cause of Shih's Injuries*

Shih also alleged Starbucks was negligent because it served her a defective cup.  Because Starbucks met its burden of showing the alleged defects in the cup were not a proximate cause of her injuries, Starbucks also met its burden of showing Starbucks' alleged negligence was not a proximate cause of Shih's injuries.[4]

---

[4]    Shih argues for the first time in her reply brief the trial court should have denied Starbucks' motion for summary judgment because Starbucks' separate statement of undisputed material facts did not comply with Code of Civil Procedure section 437c or Rule 3.1350(h) of the California Rules of Court. Shih forfeited this argument, however, by failing to raise it in her opening brief.  (See *Raceway Ford Cases* (2016) 2 Cal.5th 161, 178 ["We generally do not consider arguments raised for the first time in a reply brief."]; *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 987 ["Generally, arguments raised for the first time in a reply brief are forfeited."]; *Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1387-1388 [in general, "[w]e will not consider arguments raised for the first time in a reply brief, because it deprives [respondents] of the opportunity to respond to the argument"].)

## DISPOSITION

The judgment is affirmed.  Starbucks' motion to strike portions of Shih's reply brief is denied.  Starbucks is to recover its costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


DILLON, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/24/20 Modification and Publication Order
# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| TINA SHIH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STARBUCKS CORPORATION,<br><br>    Defendant and Respondent. | B299329<br><br>(Los Angeles County<br>Super. Ct. No. BC686784)<br><br>**ORDER MODIFYING OPINION, DENYING REHEARING, AND CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN APPELLATE JUDGMENT]** |

THE COURT:

The opinion in this case filed August 18, 2020 is modified as follows:

On page 3, in the second sentence of the first paragraph under section B of the Factual and Procedural Background, the phrase "product liability cause of action" is replaced with "products liability cause of action."

On page 7, in the first sentence of the last paragraph, the phrase "causes-in-fact" is replaced with "causes in fact."

On page 11, in the first line, which is within the bracketed explanatory clause to the *Modisette* case, the phrase "a cause-in-fact" is replaced with "a cause in fact."

In footnote 1, in the first sentence, the phrase "cause-in-fact" is replaced with "cause in fact."

The opinion in this case filed August 18, 2020 was not certified for publication. The court now certifies the opinion for publication as specified in California Rules of Court, rule 8.1105(b).

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

The appellant's petition for rehearing is denied.

This order does not change the appellate judgment.

---

PERLUSS, P. J.                SEGAL, J.                DILLON, J.*

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2