Filed 4/19/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRYAN CHANDA et al., | D059976 |
| Cross-complainants and Respondents, | |
| v. | (Super. Ct. No. ECU03970) |
| FEDERAL HOME LOANS CORPORATION, | |
| Cross-defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Reversed and remanded.

Deuprey & Associates and Dan H. Deuprey for Cross-defendant and Appellant.

Meylan Davitt Jain & Arevian and Vincent J. Davitt; Fidelity National Law Group and Kevin R. Broersma for Cross-complainants and Respondents.

Private lenders sued a private mortgage broker for negligence and breach of fiduciary duty after it was discovered that a loan they had financed had been obtained through fraud and forgery.  In this case, the trial court excluded evidence of title insurance procured by the private mortgage broker as part of the lending transaction to

protect the lenders from fraud and forgery as barred by the collateral source rule and refused to instruct the jury on superseding cause. We conclude the trial court prejudicially abused its discretion in excluding this evidence because it was relevant to liability. We also conclude the trial court properly declined to instruct the jury on superseding cause. The judgment is reversed and matter is remanded for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Federal Home Loans Corporation (FHLC) is a private mortgage broker that did equity lending, meaning that the loans originated through it were primarily based upon the value of the property, with loan to value ratios much lower than a traditional banking institution. Canizalez Associates, Inc. (Canizalez) and Valley Family Practice Medical Associates, Inc. (VFPM, together the Property Owners) each own a one-half interest in real property on which an office building is located in El Centro, California (the Property). Marcella Barker is a notary public and the former office manager for Canizalez.

In June 2006, Barker contacted FHLC and requested a loan on behalf of the Property Owners in the amount of $165,000.00 (Loan 1). Johanna Rivera, a loan officer at FHLC, went to meet with Dr. Jorge Robles, the authorized representative of VFPM and Alejandro Calderon, the authorized representative of Canizalez, for execution of the loan documents. After Barker represented that one of the owners was not available, Rivera accepted a proposal made by Barker that Barker would get the loan documents signed, including the notarized signatures of Dr. Robles and Calderon. Rivera found there was nothing out of the ordinary in dealing solely through Barker in

connection with originating the loan and gathering the documents needed. Thereafter, the promissory note for $165,000 and the accompanying deed of trust to secure the note were apparently duly signed by Dr. Robles and Calderon with each signature personally notarized by Barker. Barker, however, obtained Loan 1 by forging these signatures. Following the close of escrow, the monthly interest-only payments on Loan 1 were timely made.

About six months later, Barker requested a larger replacement loan from FHLC in the amount of $480,000.00 secured by the Property (Loan 2). FHLC brokered Loan 2 through individual lenders, Bryan and Khema Chanda (the Chandas), as an investment. Barker again forged the necessary signatures to acquire Loan 2.

When the Property Owners learned of the fraud, they sued FHLC, the Chandas and other parties to cancel the fraudulently obtained trust deeds. The Chandas then filed a cross-complaint against the Property Owners and others for, among other things, equitable subrogation. The Chandas amended their cross-complaint and sued FHLC alleging causes of action for negligence and breach of fiduciary duty.

Ultimately, all parties settled except for the Chandas' causes of action against FHLC. The Chandas' claims against FHLC proceeded to trial and a jury found that FHLC had breached fiduciary duties owed to the Chandas and that FHLC had acted with malice, fraud or oppression. The jury awarded the Chandas $590,469.51 in compensatory damages and later awarded them $62,500 in punitive damages. FHLC timely appealed.

3

DISCUSSION

## I. *Collateral Source Rule*

A. Facts

Before trial, the Chandas moved in limine to exclude (1) all evidence relating to any title insurance policy, (2) any compensation provided to the Chandas under any insurance policy, and (3) any claims or claim information exchanged between the Chandas and the title insurer. The Chandas argued that any such evidence was irrelevant to any issue to be tried and inadmissible under the collateral source rule. FHLC opposed the motion, arguing that the collateral source rule did not apply. Assuming the collateral source rule did apply, FHLC argued that evidence of title insurance it obtained on behalf of the Chandas was relevant to defend against the Chandas' breach of fiduciary duty allegations. After hearing argument from counsel, the trial court concluded that the collateral source rule applied. It granted the motion to preclude the jury from hearing about any payments the Chandas may have received under the title insurance policy, but denied the motion to the extent it sought to exclude *any* reference to title insurance, stating, "I don't see how we avoid reference to insurance, particularly title insurance, because that's part of the transaction."

The trial court's ruling on the matter evolved during trial. It later clarified that "[t]he purpose of the title insurance is irrelevant. What is admissible is that the title insurance is required by the escrow, it was obtained and the premium was paid, so [FHLC] did what [it was] supposed to do." The trial court explained that it did not know what the title insurance policy covered and concluded that evidence regarding

4

what a title policy is, what the policy covered and the named insured was not relevant; however, evidence that FHLC obtained title insurance in conformity with the escrow instructions was "fine."

FHLC later filed a motion in limine for an order allowing admission of evidence regarding insurance coverage. FHLC again argued that the collateral source rule did not apply. It also asserted that the Chandas had "'opened the door'" to the issue of insurance coverage when counsel for the Chandas requested emotional distress damages during opening statements. Before the court issued its tentative ruling on the motion, the Chandas withdrew any claim they had for general damages. After hearing argument from counsel, the court denied the motion. It explained that application of the collateral source rule excluded evidence of title insurance coverage and application of Evidence Code section 352 excluded evidence of "all the stuff" that FHLC did correctly, such as getting title insurance, as this evidence was not relevant to the case. (Undesignated statutory references are to the Evidence Code.) It again clarified that the fact FHLC obtained title insurance as part of the transaction was admissible.

The trial court later modified its ruling, deciding it would not allow any mention of title insurance based on potential prejudice having the jury know there was title insurance, but not knowing if there was coverage. It also noted the "inordinate amount of time" spent by counsel trying to draw attention to this item. FHLC unsuccessfully attempted to change the court's decision to bar all reference to title insurance, noting it could present evidence the title company did not require any

5

special category of notaries and that FHLC followed its custom of using any notary, including one that worked for the borrowers. The court heard argument, including FHLC's offer of proof that it sought to call a number of title company witnesses that would testify they had never heard of a notary who had forged signatures of people and then notarized the signatures. The trial court barred this testimony under section 352 as redundant of FHLC's expert witness.

Finally, after the jury returned its verdict in phase one, FHLC moved in limine to admit evidence of title insurance coverage to guide the jury in determining the amount of any punitive damages, arguing the evidence was relevant to the degree of reprehensibility and likelihood of harm. The trial court denied the request, essentially finding such evidence was not relevant.

B. Analysis

FHLC contends the trial court erred in excluding evidence of title insurance under the collateral source rule because this evidence was relevant to defend against the Chandas' claims of breach of fiduciary duty, rebut claims of emotional distress, and resolve punitive damages questions in both phases of the trial. As we shall explain, it was not necessary for the trial court to decide whether the collateral source rule applied in order to rule on the admissibility of the title insurance evidence. Accordingly, the trial court abused its discretion in applying the collateral source rule to exclude evidence of title insurance and we find this ruling was prejudicial, requiring that the judgment be reversed and the matter remanded for a new trial.

In determining tort damages, the collateral source rule provides "that if an

6

injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (*Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6.) The collateral source rule "operates both as a substantive rule of damages and as a rule of evidence." (*Arambula v. Wells* (1999) 72 Cal.App.4th 1006, 1015.) As part of the law of damages, the collateral source rule dictates that "[i]f an injured plaintiff gets some compensation for the injury from a collateral source such as insurance, that payment is, under the collateral source doctrine, not deducted from the damages that the plaintiff can collect from the tortfeasor. [Citation.]" (*Lund v. San Joaquin Valley Railroad* (2003) 31 Cal.4th 1, 8.) "As a rule of evidence, it precludes the introduction of evidence of the plaintiff being compensated by a collateral source unless there is a 'persuasive showing' that such evidence is of 'substantial probative value' for purposes other than reducing damages." (*Arambula v. Wells*, *supra*, 72 Cal.App.4th at p. 1015.)

Nevertheless, "'[i]t has always been the rule that the existence of insurance may properly be referred to in a case if the evidence is otherwise admissible.' [Citation.] The trial court must then determine, pursuant to Evidence Code section 352, whether the probative value of the other evidence outweighs the prejudicial effect of the mention of insurance. [Citations.]" (*Blake v. E. Thompson Petroleum Repair Co.* (1985) 170 Cal.App.3d 823, 831 (*Blake*).)

At the time of trial, the Chandas had not yet received any compensation under the title insurance policy, with the Chandas' counsel stating he was not coverage

7

counsel and did not know coverage issues. Thus, the question presented was not whether any payment from the title insurer could be deducted from any damages received by the Chandas. For this reason, there was no need for the parties to argue application of the collateral source rule or for the trial court to rule on this issue at this stage of the litigation.

The narrow question before the court was whether the jury should have been allowed to hear that the Chandas harm was *potentially* covered by title insurance. On this issue, FHLC submitted an offer of proof that it complied with industry standards to request title insurance while handling the escrow for the loan and that the title insurance policy covered fraud and forgery. Based on this offer of proof, the trial court initially decided it would allow reference to title insurance because it was part of the transaction. Ultimately, however, it excluded all mention of title insurance based on potential prejudice having the jury know there was title insurance, but not knowing if there was coverage. It also noted the "inordinate amount of time" spent by counsel trying to draw attention to this item.

Here, evidence of title insurance was relevant to FHLC's liability. Namely, FHLC presented an offer of proof that industry standards required it to obtain title insurance covering fraud and forgery for the loan transaction. Because the title insurance evidence was relevant, the admissibility of this evidence turned on whether its probative value outweighed the prejudicial effect of the mention of insurance. (*Blake*, *supra*, 170 Cal.App.3d at p. 831.)

We conclude that the probative value of the evidence outweighed its prejudicial

8

effect because any risk of prejudice could have been eliminated by instructing the jury (1) to only consider the evidence for purposes of deciding whether FHLC was negligent or had breached its fiduciary duties, and (2) to not consider any potential recovery under the title insurance policy in assessing damages as this is a matter for the court to address after the jury renders its verdict. Proceeding in this manner would have addressed the trial court's concern of potential prejudice having the jury know there was title insurance but not knowing if there was coverage, and having FHLC spend an "inordinate amount of time" trying to draw attention to this item through multiple witnesses. Accordingly, we turn to whether exclusion of this evidence prejudiced FHLC.

A party challenging discretionary rulings on motions in limine must demonstrate the court's "'discretion was so abused that it resulted in a manifest miscarriage of justice. [Citation.]'" (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 456; § 354.) A "'miscarriage of justice'" will be declared only when the reviewing court, after examining the entire case, concludes that "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

We conclude that exclusion of the title insurance evidence was prejudicial to FHLC in that it is reasonably probable a result more favorable to it would have been reached absent the error. The Chandas tried this case on the theory that FHLC did nothing to mitigate against the risk of fraud or forgery. At the beginning of trial, the

9

Chandas' counsel told the jury that the evidence would show that FHLC had no policies, procedures or practice manuals to cover "how their clients or investors might be protected." It informed the jury that the Chandas lost their entire investment based on FHLC's conduct and that punitive damages were appropriate because FHLC acted willfully, intentionally and fraudulently.

During cross-examination, FHLC's defense expert stated that a broker has a duty to mitigate the risks of possible loan fraud. FHLC, however, was prevented from eliciting testimony on redirect regarding the role of title insurance against fraud and forgery applicable to such mitigation. The record shows that FHLC's defense expert sought permission from the court to mention title insurance during his testimony, but was barred from doing so. Additionally, during closing argument, the Chandas' counsel repeatedly asserted that FHLC did nothing to protect against potential fraud. Excluding title insurance evidence prejudiced FHLC by preventing it from defending against the entire theme of the case, including the assertion that it acted with malice, fraud or oppression justifying an award of punitive damages. Thus, the judgment must be reversed and the matter remanded for a new trial. (To the extent the Chandas argue the error was not prejudicial because the jury could have found in their favor based on misrepresentation, this contention is belied by the fact the only theory presented to the jury in the special verdict form was breach of fiduciary duty.)

On remand, it is possible that the status of any claim under the title insurance policy could still be unresolved. However, even if the Chandas obtained recovery under the policy, we believe any jury confusion or potential prejudice can be avoided

10

by instructing the jury that it is not to consider any recovery under the title insurance policy in assessing damages as this is a matter for the court to address after the jury renders its verdict. (See *Blake*, *supra*, 170 Cal.App.3d at p. 831 ["[E]vidence of a plaintiff's own insurance coverage tends to diminish his chance of recovery, just as evidence of the defendant's coverage tends to enhance it."].) Should the jury render a verdict in favor of the Chandas, and the Chandas obtained compensation under the policy, then the issue whether the collateral source rule applied would be ripe for resolution to determine whether FHLC is entitled to an offset based on the compensation that the Chandas obtained under the title insurance policy.

## II. *Superseding Cause*

### A. Facts

As an affirmative defense to the operative complaint, FHLC alleged that any recovery against it was barred by Barker's superseding acts. At trial, FHLC requested CACI Nos. 432 and 433 and two special instructions on the subject of superseding cause. FHLC also requested a special verdict form containing a specific interrogatory on the issue of superseding cause. The trial court rejected the argument that Barker's actions constituted a superseding cause, declined to instruct the jury on this issue and rejected FHLC's proposed verdict form.

### B. General Legal Principles

Upon request, a party is entitled to nonargumentative and correct instructions on every theory advanced by that party if the theory is supported by substantial evidence. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*).) We

11

review the evidence most favorable to the applicability of the requested instruction, since a party is entitled to that instruction if that evidence could establish the elements of the theory presented. (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1540.) "'A judgment will not be reversed for error[] in jury instructions unless it appears reasonably probable that, absent the error, the jury would have rendered a verdict more favorable to the appellant. [Citation.]' [Citation.]" (*Ibid*.)

CACI Nos. 432 and 433 pertain to third-party conduct or intentional/criminal conduct as a superseding cause. These instructions state that to avoid responsibility, the defendant must establish four factors: the other party's conduct occurred after the defendant's, the subsequent conduct was highly unusual, the defendant had no reason to expect such wrongful conduct, and the resulting harm was different from that which could be expected from the defendant's own conduct. (CACI Nos. 432 & 433)

"[T]he defense of 'superseding cause[]' . . . absolves [the original] tortfeasor, even though his conduct *was* a substantial contributing factor, when an independent event [subsequently] intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him responsible." (*Soule*, *supra*, 8 Cal.4th at p. 573, fn. 9.) In criminal cases, intervening causes are typically described as either dependent or independent. (*People v. Schmies* (1996) 44 Cal.App.4th 38, 49.) "A dependent intervening cause will not absolve a defendant of criminal liability while an independent intervening cause breaks the chain of causation and does absolve the defendant. [Citation.]" (*Ibid*.)

12

To determine whether an independent intervening act was reasonably foreseeable, we look to the act and the nature of the harm suffered. (*Hardison v. Bushnell* (1993) 18 Cal.App.4th 22, 27.) To qualify as a superseding cause so as to relieve the defendant from liability for the plaintiff's injuries, both the intervening act and the results of that act must not be foreseeable. (*Pappert v. San Diego Gas & Electric Co.* (1982) 137 Cal.App.3d 205, 210.) Significantly, "what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57–58.) Whether an intervening force is superseding or not generally presents a question of fact, but becomes a matter of law where only one reasonable conclusion may be reached. (*Brewer v. Teano* (1995) 40 Cal.App.4th 1024, 1035.)

C. Analysis

FHLC contends the trial court prejudicially erred in refusing to give CACI Nos. 432 and 433 because the evidence supported these instructions. In making this argument, FHLC focused exclusively on whether Barker's conduct was foreseeable, asserting that foreseeability presented a factual question to be decided by the jury. Specifically, FHLC made an offer of proof that FHLC, FHLC's retained broker expert, and title company officers have never encountered a situation where a notary personally forged the signatures to be authenticated and that Barker's act of forgery was not reasonably foreseeable. We requested and received further briefing on whether evidence existed to prove the first factor listed under CACI Nos. 432 and 433 regarding superseding cause, i.e., whether Barker's superseding conduct occurred after

13

the conduct of FHLC. We conclude the trial court properly refused to instruct on superseding cause.

To absolve FHLC of liability, Barker must have acted subsequent to FHLC's acts and her actions must qualify as an unforeseeable independent event that produced an unforeseeable result. (*Soule*, *supra*, 8 Cal.4th at p. 573, fn. 9.) In their supplemental briefing, the parties point to evidence that some of Barker's acts of malfeasance occurred before FHLC's acts and some after. Among other things, the parties cite to the events surrounding Loan 1 and Barker's act of intercepting loan documents mailed to the Property Owners after the closing of Loan 2. This evidence shows us that Barker's and FHLC's actions were intertwined temporally, not independent of each other and contributed to the harm ultimately suffered by the Chandas. In other words, this case presents a situation of concurrent or contributory causation where the wrongful acts of Barker and FHLC contributed to the Chandas' harm.

To the extent FHLC argues it was unforeseeable that a notary would commit forgery, we agree with the Chandas that FHLC is viewing the facts too narrowly. The general character of the event, the submission of forged loan documents was highly foreseeable. (*Bigbee v. Pacific Tel. & Tel. Co.*, *supra*, 34 Cal.3d at pp. 57–58.) The fact a notary committed the forgery, a notary's cohort committed the forgery, or a notary negligently authenticated a forged signature, are details that do not change the general character of the event—the submission of forged loan documents. Finally, the result of that event, the Chandas' loss of their investment, was also highly foreseeable.

14

Accordingly, there was no factual issue on superseding cause for the jury to consider and the trial court properly declined to present this issue to the jury.

## DISPOSITION

The judgment is reversed and the matter is remanded for a new trial.  Appellant is entitled to its costs on appeal.

McINTYRE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.