Filed 6/23/21  Bernal v. Carson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JOSEPH BERNAL, | D076997 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU000341) |
| DENNIS CARSON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge.  Reversed.

Sutherland & Gerber and Lowell F. Sutherland, for Plaintiff and Appellant.

Law Offices of Joseph J. Barr & Associates and Joseph J. Barr, Jr., for Defendant and Respondent.

I

INTRODUCTION

Joseph Bernal was injured when he got into a physical altercation with teenagers who were trespassing in an abandoned home near his residence.

Bernal filed negligence and nuisance claims against Western Residential Builders, LLC (Western), which owns the property on which the abandoned home is located, and Dennis Carson, a member and manager of Western. He alleged the defendants knew or reasonably should have known the dilapidated condition of the home was likely to attract trespassers prone to violence.

Carson moved for summary judgment on two grounds. First, he asserted the torts were committed by Western, if they were committed at all, and he could not be held personally liable based solely on his status as Western's member and manager. Second, he claimed Bernal instigated the confrontation with the teenagers—intervening conduct that allegedly broke the chain of causation and absolved Carson of tort liability. The trial court accepted the first of these arguments and granted summary judgment without addressing the merits of the second argument.

Bernal appeals the judgment entered after the summary judgment order. He asserts Carson may be held liable in tort to the extent he personally failed to abate a known nuisance under his control. Further, he claims the issue of whether his conduct was superseding presents a disputed question of material fact that is not suitable for resolution at the summary judgment stage.

We conclude both of Bernal's arguments have merit. Therefore, we reverse the judgment and remand the matter for further proceedings.

## II
## BACKGROUND

The following facts are taken from the evidence filed with the summary judgment briefing and are undisputed unless otherwise noted.

## A

Western is a manager-managed limited liability company (LLC) that was formed to develop land for residential use. Western has two members—Carson and D Carson Construction, a corporation managed by Carson. Carson is Western's only manager.

In 2004, Western bought land in the City of El Centro (the City), including a 1.66-acre parcel with an abandoned home on it. At the time of the purchase, the home was in a state of general disrepair and had broken or missing windows, doors, and fixtures. Carson inspected the property shortly after the sale and was aware of the home's condition.

Acting on behalf of Western, Carson retained an engineering firm to subdivide the property for residential development. A tentative subdivision map was prepared. However, due to financial shortfalls, Western was unable to develop the property as planned. It remains undeveloped today.

Sometime in the mid-2000s, the Franchise Tax Board (FTB) suspended Western's powers, rights, and privileges as an LLC.[1]

## B

In 2015, Bernal moved into a residence near Western's property. Before he moved in, he was aware there was overgrown brush and a vacant home on Western's property. At some point, he became aware that transients, vagrants, and minors occasionally visited the vacant home. On multiple occasions, Bernal spoke with trespassers on Western's property and told them it was not a good idea for them to be there.

---

[1] The parties do not point us to any evidence showing the reason for the suspension. However, Bernal's counsel represented to the trial court that Western's nonpayment of taxes caused the suspension.

3

Bernal reported the condition of Western's property to the City. A City Code enforcement officer inspected the property and issued a notice to abate directed to "Western Residential Builders LLC c/o Dennis Carson." The notice stated the property was "covered with overgrown vegetation" and "pos[ed] an extreme fire hazard" in violation of the City Code. It described the condition as a public nuisance and ordered Western to abate or remove the nuisance.

Carson hired a repair person to address the issues discussed in the notice to abate. The repair person boarded up windows and doors on the home, posted no trespassing signs, and cleared out at least a portion of the overgrown brush on the property.

C

One evening, Bernal observed an unfamiliar vehicle parked on his cul-de-sac. He also saw light and heard noises coming from the home on Western's property. Bernal left his residence to investigate and crossed over a pushed-down fence onto Western's property. He then called out and asked what was going on inside the home.

A group of teenagers was inside the home. After Bernal called out to them, the teenagers exited the home and returned to their vehicle, which was parked on the cul-de-sac near Bernal's residence. Bernal followed them.

Once the teenagers got back to their vehicle, Bernal grabbed one of the teenagers from behind and stated he could not leave until law enforcement arrived. Bernal then released the restrained teenager and pushed a second teenager into the vehicle. One of the teenagers testified in deposition that Bernal struck a third teenager on the head as well. Bernal denies the allegation that he struck a teenager on the head.

4

A scuffle ensued and punches were thrown. During the scuffle, Bernal suffered a black eye, abrasions, and a fractured wrist.

D

Bernal filed a complaint alleging nuisance and negligence causes of action against Carson and Western, as well as a negligence cause of action against one of the teenagers. Bernal alleged the home on Western's property was a nuisance due to its abandoned and dilapidated condition and Carson and Western had a duty to abate the nuisance. Further, Bernal alleged Carson and Western knew or reasonably should have known the home was "abandoned and in a dilapidated condition," and "said residence attracted transients, vandals, and drugs users, a substantial number of whom have a propensity towards violence." According to Bernal, Carson and Western acted negligently by "allow[ing] the … residence to remain abandoned and dilapidated, thereby attracting persons with violent propensities …."

Carson moved for summary judgment on two bases. First, he asserted he could not be held liable merely because he was a member and manager of Western, which owned the property on which the alleged nuisance was located. In support of this argument, Carson cited Corporations Code section 17703.04, subdivision (a),[2] which states in part as follows: "All of the following apply to debts, obligations, or other liabilities of [an LLC], whether arising in contract, tort, or otherwise: [¶] (1) They are solely the debts, obligations, or other liabilities of the [LLC] …. [¶] (2) They do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager for the [LLC]." Second, Carson argued that Bernal's pursuit of the teenagers

_____

[2]     Undesignated statutory references are to the Corporations Code.

5

and his confrontation with them was superseding conduct that broke the chain of proximate causation.

Bernal opposed Carson's summary judgment motion. He asserted he did not seek to hold Carson liable based solely on his status as a member and manager of Western. Rather, according to Bernal, he sought to hold Carson liable for his personal failure to remedy the known dilapidated condition of the home. Regarding proximate causation, Bernal asserted a plaintiff's own conduct can never constitute a superseding act. In the alternative, he argued that the issue of whether his conduct was superseding presented a disputed factual issue unsuitable for resolution on summary judgment.

After a hearing, the court granted Carson's motion for summary judgment. In its summary judgment order, the court quoted subdivision (a) of section 17703.04, and then made the following findings: "[I]t is clear that Mr. Carson had a duty to Western Residential, and may have breached that duty in failing to adequately abate the nuisance on the property. There is no showing that Mr. Carson owed any duty to [Bernal] as a third party which would give rise to personal liability for failure to adequately abate the nuisance. While Mr. Carson may have been negligent in terms of his duty to Western Residential, the nonfeasance does not give rise to personal liability to [Bernal] without a duty owed directly from Mr. Carson to [Bernal]." On this basis, the court granted summary judgment and entered judgment in Carson's favor.

III

DISCUSSION

In this appeal, we consider whether Carson was entitled to summary judgment: (1) under the liability limitation provision in section 17703.04; or (2) on grounds that Bernal's conduct was superseding as a matter of law.

6

A

*Legal Principles*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "[G]enerally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850.) Thus, a defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Ibid.*, citing Code Civ. Proc., § 437c, subd. (*o*)(2).)

Bernal asserted negligence and nuisance causes of action against the defendants. "To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).) Where, as here, " 'negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim.' [Citation.] The nuisance claim 'stands or falls with the determination of the negligence cause of action' in such cases.'" (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542 (*Melton*).) Thus, Carson bore the burden of demonstrating that Bernal could not prove at least one of the elements of negligence—i.e., duty, breach of duty, proximate causation, or damages—or that there was a complete defense to his causes of action.

7

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1249–1250.) We are not bound by the issues decided by the trial court and " ' "should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court, providing the facts are undisputed." ' " (*Leyva v. Crockett & Co., Inc.* (2017) 7 Cal.App.5th 1105, 1108.)

B

*Summary Judgment Was Not Warranted Under Section 17703.04*

As previously noted, Western is an LLC. " 'A[n] [LLC] is a hybrid business entity formed under the Corporations Code and consisting of at least two "members" [citation] who own membership interests [citation]. The company has a legal existence separate from its members. Its form provides members with limited liability to the same extent enjoyed by corporate shareholders,' " (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963), while also "maintaining the attributes of a partnership for federal income tax purposes," (*People v. Pacific Landmark, LLC* (2005) 129 Cal.App.4th 1203, 1211–1212 (*Pacific Landmark*)).

The management authority of an LLC is vested by default in its members, but the LLC's articles of organization may entrust management

8

authority to one or more managers instead.  (§ 17704.07, subd. (a).)  In a manager-managed LLC, the manager "is an agent of the [LLC] for the purpose of its business or affairs" and the manager's acts generally bind the LLC.  (§ 17703.01, subd. (b)(2).)  A manager owes fiduciary duties to the LLC, including the duties of loyalty and care.  (§ 17704.09, subds. (a), (f).)

Section 17703.04 codifies the rules governing member and manager liability.  It states that the debts, liabilities, and obligations of an LLC "are solely the debts, obligations, or other liabilities of the [LLC]" and "do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager for the [LLC]."  (§ 17703.04, subd. (a).)  However, a member is "personally liable … for any debt, obligation, or liability of the [LLC], whether that liability or obligation arises in contract, tort, or otherwise, under the same or similar circumstances and to the same extent as a shareholder of a corporation may be personally liable for any debt, obligation, or liability of the corporation."  (§ 17703.04, subd. (b).)  A member is also liable "to third parties for the member's participation in tortious conduct …."  (§ 17703.04, subd. (c).)  Further, a manager may "be held accountable … for [her] personal participation in tortious or criminal conduct, even when performing [her] duties as manager."  (*Pacific Landmark, supra*, 129 Cal.App.4th at p. 1213; accord *Bonfigli v. Strachan* (2011) 192 Cal.App.4th 1302, 1317 [managers "cannot escape potential liability by using their business entity as a shield"].)

On appeal, Carson argues the judgment must be affirmed based on the personal liability limitation codified in section 17703.04, subdivision (a). According to Carson, that statutory provision precludes a manager or member such as himself from being held personally liable for "mere

9

nonfeasance" and permits a finding of personal liability only when the manager or member commits an affirmative tortious act.

We disagree. Certainly, section 17703.04, subdivision (a) draws no distinction between acts and omissions. Instead, it precludes a member or manager from being held liable "solely by reason" of his or her position with the LLC—a qualified limitation that is not dependent on *how* the tort or breach at issue has been committed. (§ 17703.04, subd. (a).) And section 17703.04 broadly states, without limitation, that a member *may* be held liable "to third parties for the member's participation in tortious conduct ...." (§ 17703.04, subd. (c).) " ' "[T]ortious conduct" denotes that conduct, *whether of act or omission*, which subjects the actor to liability under the principles of the law of torts.' " (*KFC Western, Inc. v. Meghrig* (1994) 23 Cal.App.4th 1167, 1181, quoting Rest.2d Torts, § 6, italics added; *Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 345.)

Had the Legislature intended to limit personal member or manager liability to instances of affirmative misconduct, as opposed to tortious nonfeasance, it could have done so. Given that it did not do so, we decline to impose such a limitation into the statute. "Our role in interpreting the statute is 'not to insert what has been omitted, or to omit what has been inserted.' " (*MCI Communications Services, Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 646, quoting Code Civ. Proc., § 1858.)

The case law does not support Carson's proposed limitation on personal liability either. *Pacific Landmark, supra*, 129 Cal.App.4th 1203 is instructive. In that case, the City of Los Angeles and the People sued an LLC that owned a strip mall and the LLC's manager, seeking to enjoin and abate a public nuisance at the strip mall—namely, a prostitution ring. (*Id.* at

pp. 1207–1209.) The trial court issued a preliminary injunction against the LLC and its manager enjoining them from owning, leasing, maintaining, or managing the property in a manner that permitted prostitution. (*Id.* at p. 1210.) The manager appealed and, based on a predecessor statute to section 17703.04,[3] asserted that he was exempt from personal liability for any judgment against, or obligations of, the LLC. (*Id.* at p. 1212.)

The Court of Appeal rejected this argument and affirmed the preliminary injunction. It reasoned "that managers were not intended to be held liable for the wrongs their companies commit simply because of their status as managers." (*Pacific Landmark, supra*, 129 Cal.App.4th at p. 1213.) However, the court determined that the statutory limitation on personal liability was "a circumscribed protection from liability," which did "not preclude personal liability for a manager's own conduct." (*Ibid.*)

Then, the court reasoned the preliminary injunction at issue was proper as to the manager because it "was not imposed on him solely because of his status as manager of [the LLC], but because of his personal involvement *in allowing the nuisance to persist*." (*Pacific Landmark, supra*, 129 Cal.App.4th at p. 1216, italics altered.) It noted the manager "occupied a prominent and influential position" and "had full responsibility for and authority over the property where the nuisance occurred." (*Ibid*.) And while the manager sent the strip mall tenants a notice to perform covenant, "[he] failed thereafter to inspect the premises to ascertain whether [the tenants]

---

3    The predecessor statute stated: "No person who is a manager or officer or both a manager and officer of [an LLC] shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the [LLC], whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a manager or officer or both a manager and officer of the [LLC]." (Former § 17158, subd. (a), added by Stats. 1994, ch. 1200, § 27 and repealed by Stats. 2012, ch. 419, § 19.)

had complied with the notice." (*Ibid.*) Because the manager "had the knowledge and the responsibility to prevent the nuisance," he was "not insulated from liability … for his personal involvement in aiding and abetting the nuisance *and for failing to abate it ….*" (*Id.* at p. 1217, italics added.)

Carson's argument is further undermined by *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490 (*Frances T.*), a case that arose in the analogous context of a corporate director's personal liability to a third party.[4] In that case, a resident of a condominium was the victim of heinous crimes committed in her condominium unit. She sued her condominium association (a corporation) and the individual members of the association's board of directors alleging, among other things, that the defendants failed to ensure there was adequate lighting in the condominium project. (*Id.* at p. 498.) The trial court sustained the defendants' demurrer and the Supreme Court reversed the judgment in relevant part. (*Id.* at pp. 511–512.)

In concluding the directors' alleged failure to act gave rise to an actionable negligence claim, the court explained that a director may be liable to a third party if it is proven "that the director specifically authorized, directed or participated in the allegedly tortious conduct [citation]; *or that although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm* [citations]." (*Frances T., supra*, 42 Cal.3d at pp. 508–509, italics added.) The

---

4      Although *Frances T.* arose in the corporate context, it provides a useful comparison. (See *Pacific Landmark, supra*, 129 Cal.App.4th at p. 1216; § 17703.04, subd. (b) [a member is liable "under the same or similar circumstances and to the same extent as a shareholder of a corporation"].) "Certainly, there is no indication that the Legislature intended to confer more protections for managers of limited liability companies than for corporate officers and directors." (*Pacific Landmark*, at p. 1216.)

court noted that *"[d]irectors and officers have frequently been held liable for negligent nonfeasance* where they knew that a condition or instrumentality under their control posed an unreasonable risk of injury to the plaintiff, but then failed to take action to prevent it." (*Id.* at p. 510, italics added; accord *PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1380 ["A corporate director or officer's participation in tortious conduct may be shown not solely by direct action but also by knowing consent to or approval of unlawful acts."].)

These same liability principles control here. It is undisputed that Carson was aware of the deteriorated condition of the home on Western's property. He personally visited the home after Western bought the property and observed first-hand that the home had broken or missing doors, windows, and fixtures, as well as debris and graffiti. He was also the direct recipient of the City's notice to abate, which stated that, at least in the City's view, a condition on the property was a public nuisance in need of abatement.

As the managing member of Western, Carson had authority to abate the alleged nuisance by developing, improving, securing, or demolishing the home as necessary. He even purported to exercise this authority when he hired a repair person to try to address the issues discussed in the notice to abate. Nevertheless, those efforts apparently did not remediate the condition of the home. Indeed, Carson did not move for summary judgment, and does not argue for affirmance of the judgment, on grounds that the alleged nuisance had been fully abated at the time of the brawl. Thus, we can assume for purposes of this appeal that whatever steps Carson took in response to the City's notice simply were not enough to abate the nuisance.

In short, it is clear to us that Carson was not sued based on his mere status as a manager and member of Western. Rather, like the manager-defendant in *Pacific Landmark* and the director-defendants in *Frances T.*,

13

Carson was sued in his personal capacity based on his own alleged misconduct—specifically, his purported failure to take necessary action to abate a known nuisance that was subject to his control. Section 17703.04 does not shield him from liability under these circumstances. Nor does it compel summary judgment in his favor. Because the trial court ruled to the contrary, we conclude the judgment cannot be affirmed for the reasons set forth in the trial court's summary judgment order.[5]

## C

### *A Triable Issue of Material Fact Exists Concerning Whether Bernal's Conduct Was Superseding*

Next, we consider whether summary judgment was warranted on grounds that Bernal's conduct constituted an intervening and superseding act that broke the chain of proximate causation as a matter of law. As noted, proximate causation is an element of both the negligence and nuisance causes of action Bernal alleged against the defendants. (*Brown, supra*, 11 Cal.5th at p. 213; *Melton, supra*, 183 Cal.App.4th at p. 542.)

Proximate causation " ' "focuses on public policy considerations. Because the purported [factual] causes of an event may be traced back to the dawn of humanity, the law has imposed additional 'limitations on liability other than simple causality [in fact].' [Citation.] 'These additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy.' [Citation.] Thus, 'proximate cause "is ordinarily concerned, not with the fact of causation, but

---

[5]     In their appellate briefs, the parties do not address what implications, if any, Western's FTB suspension has on Carson's ability to invoke the personal liability limitation codified in section 17703.04. Therefore, our analysis assumes, without deciding, that Western's suspension is not pertinent to the availability of the personal liability limitation.

with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." ' " ' " (*Novak v. Continental Tire North America* (2018) 22 Cal.App.5th 189, 196 (*Novak*).)  It " ' "relieve[s] the defendant whose conduct is a cause in fact of the injury, where it would be considered unjust to hold him or her legally responsible." ' " (*Ibid.*)

"One policy consideration subsumed within the broad concept of proximate cause is the extent to which a defendant should be held liable for unforeseeable consequences." (*Novak, supra*, 22 Cal.App.5th at p. 196; see *City of Oroville v. Superior Court* (2019) 7 Cal.5th 1091, 1104 [proximate causation "in tort law is often defined largely in terms of foreseeability"].)  "[A] defendant's 'conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.' " (*Novak*, at p. 197.)

"Proximate cause analysis is also concerned with intervening forces operating independent of defendant's conduct." (*Novak, supra*, 22 Cal.App.5th at p. 197.)  "A principle in tort law is that when 'subsequent to the defendant's negligent act, an independent intervening force actively operates to produce the injury, the chain of causation may be broken.' " (*Ash v. North American Title Co.* (2014) 223 Cal.App.4th 1258, 1274 (*Ash*).)  " 'An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.' " (*Ibid.*, quoting Rest.2d Torts, § 441, subd. (1).)  " '[A] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.' " (*Ibid.*, quoting Rest.2d Torts, § 440.)

15

"A superseding cause relieves a defendant from tort liability for a plaintiff's injuries, if both the intervening act and the results of the act are not foreseeable." (*Ash, supra*, 223 Cal.App.4th at p. 1274; see *Chanda v. Federal Home Loans Corp.* (2013) 215 Cal.App.4th 746, 755–756 (*Chanda*).) "[F]oreseeability is a question for the jury unless undisputed facts leave no room for a reasonable difference of opinion. [Citations.] Thus, the issue of superseding cause is generally one of fact." (*Torres v. Xomox Corp.* (1996) 49 Cal.App.4th 1, 19; see *Chanda*, at p. 756 ["Whether an intervening force is superseding or not generally presents a question of fact, but becomes a matter of law where only one reasonable conclusion may be reached."].)

In the proceedings below, Carson moved for summary judgment on grounds that Bernal's pursuit of, and confrontation with, the teenagers were superseding acts that absolved Carson of liability notwithstanding any possible breach of duty of care. In response, Bernal asserted a plaintiff's own conduct can never be superseding. He repeats this argument on appeal and notes that the standard jury instructions on superseding causes (CACI Nos. 432 and 433) refer to intervening acts of third parties, not intervening acts of the plaintiff.

A superseding act is typically committed by a third party. However, case law suggests that is not always the case. In *Kahn v. East Side Union High School District* (2003) 31 Cal.4th 990, the Supreme Court considered the propriety of a summary judgment order in favor of the defendants in a negligence case filed after a member of a school swim team was injured while diving into a shallow pool. (*Id.* at pp. 997, 1000.) The court opined that "[t]he question whether plaintiff's voluntary decision to practice the shallow-water dive without supervision constituted a *supervening* cause of her injury depend[ed] on whether her conduct ' "was within the scope of the reasons

16

imposing the duty upon the [defendants] to refrain from negligent conduct.' ' " (*Id.* at p. 1016, original italics.)  The court explained that " ' "[i]f the duty is designed, in part at least, to protect the [plaintiff] from the hazard of being harmed by the intervening force ... then that hazard is within the duty, and the intervening force is not a superseding cause." ' " (*Ibid.*)  After making these observations, the court concluded summary judgment was improper, in part, because there were disputed issues of material fact regarding whether the plaintiff's conduct was a superseding cause of her injury.  (*Id.* at p. 1017; see 57A Am.Jur.2d Negligence § 613 ["the general rule, which is subject to certain exceptions, is that a plaintiff's own conduct may be a superseding cause, absolving a negligent defendant from liability"].)

In other decisions, courts in our state have determined that a plaintiff's conduct can be the "sole" proximate cause of his or her own harm.  (See, e.g., *Fredette v. City of Long Beach* (1986) 187 Cal.App.3d 122, 133 ["the situation … involved the negligence of plaintiff as the sole and proximate cause of the accident"]; *Elder v. Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650, 657 ["the label 'sole proximate cause' may properly be applied to plaintiff's conduct"]; *Bell v. Seatrain Lines, Inc.* (1974) 40 Cal.App.3d 16, 29 [jury was correctly instructed there should be no recovery "if plaintiff's own negligence was the sole proximate cause of his injury"].)  These decisions do not speak in terms of superseding causation, but the import is the same.  They stand for the proposition that a plaintiff's conduct—whether denominated as a superseding

17

cause or a sole proximate cause of harm—can relieve a defendant of liability notwithstanding the defendant's breach of a duty of care.[6]

The question remains: was Bernal's conduct superseding as a matter of law, thus entitling Carson to summary judgment? We conclude it was not. As an initial matter, there is some dispute as to the exact conduct in which Bernal engaged and the context for that conduct. Bernal testified in deposition that he pushed one of the teenagers into the vehicle because the teenager was "approaching" him "with purpose" and he needed to "deflect" the teenager's incoming approach. Bernal also testified he "got hit" from behind while he was turning away from the incident and preparing to walk back to his residence. However, one of the teenagers painted a very different picture of the scuffle in his deposition. According to the teenager, Bernal screamed profanity at them and "grabbed [one of them] by the strap [of his backpack] and punched him in the back of his head, and that started the altercation between them." These diverging accounts of the scuffle indicate that Bernal's conduct presents a disputed issue of material fact.

Further, we believe a jury reasonably could find that it was foreseeable an abandoned home would attract trespassers, which in turn would lead to a confrontation between the trespassers and a neighbor upset by the trespassers' activities. That is true regardless of whether it was the trespassers or the neighbor who instigated the physical confrontation that ultimately transpired. (See *Chanda, supra*, 215 Cal.App.4th at p. 756 [" '[W]hat is required to be foreseeable is the general character of the event or

---

[6]    Of course, a plaintiff's own conduct can also be relevant in a comparative negligence analysis. "Under comparative fault principles, a plaintiff's negligence … reduces 'the *damages* awarded … in proportion to the amount of negligence attributable to the [plaintiff].' " (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1156, italics added.)

harm ... not its precise nature or manner of occurrence.' "].)  Further, we cannot conclude, as a matter of law, that the physical injuries Bernal suffered during the scuffle were unforeseeable.  On the contrary, a reasonable jury could find that a neighbor caught in a brawl with trespassers would endure physical injuries such as scrapes, a black eye, and a fractured wrist.

For all these reasons, the issue of whether Bernal's conduct was superseding is disputed and properly reserved for the trier of fact to resolve in the first instance.  Therefore, the summary judgment order cannot be affirmed based on Bernal's alleged inability to establish the element of proximate causation.

IV

DISPOSITION

The judgment is reversed.  Bernal is entitled to his costs on appeal.


McCONNELL, P. J.

WE CONCUR:


HALLER, J.


DO, J.